**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**GERALD L. HURST**,

                         Plaintiff,

    - v -                                                Civ. No. 9:13-CV-0681
                                                                (DNH/RFT)

**MR. SEARLES**, *Lieutenant, F.C.I. Ray Brook,* **MR. DEGON**, *Lieutenant, F.C.I. Ray Brook,* **MR. HALLADAY**, *Correctional Officer, F.C.I. Ray Brook*, **MR. GODFREY**, *Correctional Officer, F.C.I. Ray Brook*, **MR. HUMPHRIES**, *Correctional Officer, F.C.I. Ray Brook*,

                        Defendants.

**APPEARANCES:**                                        **OF COUNSEL:**

**GERALD L. HURST**
Plaintiff, *Pro Se*
64336-053
Cumberland Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Cumberland, MD 21501

**THE HON. RICHARD S. HARTUNIAN**          **CHARLES E. ROBERTS**
United States Attorney of the                     Assistant United States Attorney
Northern District of New York
Attorney for Defendants
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-0646

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Gerald Hurst brings this Complaint alleging that Defendants, employees at Federal Correctional Institute ("FCI") Raybrook, violated his Eighth Amendment rights by failing to protect him from another inmate and confining him to a dry cell for seven days. *See generally*

Dkt. No. 1, Compl. Defendants now move for summary judgment.[1] Dkt. No. 25. Plaintiff opposes the Motion. Dkt. No. 29, Pl.'s Opp'n. Defendants have replied to Plaintiff's Opposition. Dkt. No. 30, Defs.' Reply. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED** and the instant action be **DISMISSED.**

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287

---

[1] Defendants originally moved for relief under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and in the alternative, 56. However, pursuant to an order of this Court, that Motion has been construed as a Motion for Summary Judgment with Alternative Relief. Dkt. No. 26, Text Order, dated Mar. 24, 2014. Defendants were ordered to file the appropriate statement of material facts pursuant to Local Rule 7.1(a)(3), and Plaintiff was provided with notice of the consequences of failing to properly reply to such a motion, as well as adequate time to respond to Defendants' Motion for Summary Judgment. *See id.*; *see also* Dkt. Nos. 27–29.

(2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Summary of Facts

The following facts are undisputed.

Plaintiff was housed at FCI Raybrook between April 29, 2011 and January 27, 2012. Dkt. No. 25-2 through 25-4, Cheryl Magnusson Decl., dated Feb. 19, 2014, at ¶ 5 & Ex. C, Inmate Admission/Release History.

On July 16, 2011, Plaintiff was placed in a dry cell[2] by Defendant Searles, pending investigation of his suspected introduction of contraband into the facility. *Id.* at ¶ 21 & Ex. I, Lt-Mem., dated July 16, 2011; Compl. at p. 3.[3] Plaintiff remained in the dry cell until Defendant Searles removed him on July 21, 2011. Magnusson Decl. at ¶ 22 & Ex. H, Pl.'s Housing Quarters R.; Compl. at p. 3. Plaintiff never grieved this issue while at FCI Raybrook. Magnusson Decl. at ¶ 10 & Ex. D, Pl.'s Grievance History R.

On July 26, 2011, Plaintiff was sentenced to serve fifteen days in disciplinary segregation ("DS"), following a disciplinary hearing in an unrelated matter. *Id.* at ¶ 23 & Ex. K, Pl.'s Disciplinary R. Plaintiff remained in DS, in cell 210, through August 10, 2011. *Id.* at ¶ 23 & Ex. H, Pl.'s Housing Quarters R. On August 10, Plaintiff's status was changed from DS to administrative detention ("AD"), however, he remained in cell 210 for an additional seven days. *Id.* at ¶ 23 & Ex. H. On August 16, Plaintiff was involved in a fight with his cellmate. *Id.* at ¶ 24 & Ex. L, Incident Rep., dated Aug. 16, 2011. Plaintiff shared cell 210 with the same inmate between July 26, 2011 and August 16, 2011; this inmate was classified as DS during this entire period. *Id.* at Ex. M., Redacted Inmate's Housing Quarters R.

### B. Failure to Protect

---

[2] A dry cell is one without sink or toilets. *Wolff v. McDonnell*, 418 U.S. at 552 n.9. According to documents submitted by Defendants,"When there is reasonable belief that an inmate has ingested contraband or concealed contraband in a body cavity . . . the Warden or designee may authorize the placement of an inmate in a room or cell for the purpose of staff's closely observing that inmate until the inmate has voided the contraband or until sufficient time has elapsed to preclude the possibility that the inmate is concealing contraband." Magnusson Decl. at Ex. J, Program Statement # 5521.05, at ¶ 7.

[3] Plaintiff's Complaint is not sequentially paginated, accordingly we refer to the page numbers automatically assigned by the Court's Case Management Electronic Case Files System.

Plaintiff alleges that Defendants Godfrey, Halladay, Humphries, and Degon failed to protect him when they allowed him to remain confined with a DS status inmate after his status was changed from DS to AD, and a fight subsequently occurred. Compl. at ¶ 4. Defendants argue, *inter alia*, that this claim is unexhausted and without merit. Dkt. No. 25-1, Defs.' Mem. of Law, at pp. 5–7 & 14–19. Because we find this claim to be plainly meritless, we need not discuss the issue of exhaustion. *See* 42 U.S.C. § 1997e ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006).

Plaintiff's failure to protect claim arises under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397 (1971). *In Bivens,* the Supreme Court recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. *See Ellis v. Blum,* 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens action is a judicially-created remedy); see also Carlson v. Green,* 446 U.S. 14, 18, (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities*. See Polanco v. United States Drug Enforcement Admin.,* 158 F.3d 647, 652 (2d Cir. 1998) (cited in *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir. 2007)). In order to state a *Bivens* claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law. *Soichet v. Toracinta,* 1995 WL 489434, at *3 (S.D.N.Y. Aug.16, 1995).

The Second Circuit has recognized that "*Bivens* actions are not significantly dissimilar to

claims brought under §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *Taverez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (citing *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir. 1987)). Thus it has been held that 42 U.S.C. § 1983 law is applicable to *Bivens* actions "[b]ecause the two actions share the same 'practicalities of litigation.'" *Id.* at 110 (citation omitted). Furthermore, "[b]ecause the doctrine of respondeat superior does not apply in Bivens actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d at 496 (citation omitted).

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)); *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him." *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. at 319 (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may

not ensue. *Farmer v. Brennan*, 511 U.S. at 836. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added). However, an officer may not be held liable where he had "no realistic opportunity" to intervene on an inmate's behalf. *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding no realistic opportunity to intervene where "three blows were struck in [] rapid succession."); *accord Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Jean-Laurent v. Wilkinson,* 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) aff'd *Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).

To the extent that Plaintiff argues that allowing an AD status inmate to be housed with a DS status inmate is prohibited by prison policy, no such policy exists. *Compare* Compl. at ¶ 4, *with* Magnusson Decl. at Ex. N, Program Statement # 5270.10. More importantly, nothing in the record before us indicates that any of the Defendants were ever made aware that Plaintiff was subject to any risk of harm prior to August 16, 2011. Indeed, the only allegation in any of Plaintiff's papers which comes remotely close to establishing that one of the Defendants knew or should have known that Plaintiff was being subjected to a risk of harm is Plaintiff's allegation that "[u]pon becoming aware that I was not placed in the proper status of segregation due to the fact that I had not received a Disciplinary sanction I informed the range officer and subsequently Defendant Degon who was the Special Housing Lieutenant." Compl. at p. 3. Crucially, nothing in this statement sufficiently puts a reasonable person on notice that Plaintiff was at risk of being harmed by his cellmate. Particularly in the instant case, where Plaintiff had been housed with this individual from July 26 through August 15 without incident. Indeed, Plaintiff does not allege, and we can find no evidence in the record to

-7-

suggest, that prior to August 16, Plaintiff ever notified any of the Defendants that he was afraid of or had been threatened with physical violence from his cellmate. Nor is there any other evidence in the record to suggest that any of the Defendants should have suspected Plaintiff was at risk of being harmed by his cellmate.

Accordingly, because there is no outstanding issue of genuine fact with respect to whether any of the Defendants knew that Plaintiff was at risk of being harmed, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's failure to protect claim**.** *See Farmer v. Brennan*, 511 U.S. at 837.

### C. Dry Cell

Plaintiff next alleges that he was subjected to cruel and unusual punishment when he was confined to a dry cell for seven days by Defendant Searles. Compl. at p. 3. Because it is clear that Plaintiff failed to exhaust his available administrative remedies with respect to this claim, we will not consider its merit. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516 (2002). The PLRA applies equally to *Bivens claims. Id.* at 524.

The Bureau of Prisons has established a tiered administrative remedy procedure whereby an inmate may challenge any aspect of his imprisonment. 28 C.F.R. §§ 542.10–542.19. The inmate must first present his grievance to staff as a means of informally resolving the dispute. *Id.* at § 542.13(a). If the dispute remains unresolved, the inmate may file a formal Request for

Administrative Remedy with the prison warden within twenty calendar days following the date on which the basis for the Request occurred. *Id.* at § 542.14(a). An extension may be given if the inmate provides a valid reason for any delay in filing the request. *Id.* at § 542.14(b). If dissatisfied with the warden's response, the inmate may submit an appeal to the Regional Director. *Id.* at § 542.15(a). If dissatisfied with the Regional Director's response, the inmate may submit an appeal to the Central Office of the Bureau of Prison's General Counsel. *Id.* An administrative appeal to the General Counsel is the "final administrative appeal." *Id.* "Only upon completion of all of the required steps of this prescribed process does a federal inmate fully exhaust available administrative remedies." *Thompson v. Sadowski*, 2011 WL 7640125, at *7 (N.D.N.Y. Aug. 16, 2011) (surveying cases).

In the instant case, it is undisputed that Plaintiff failed to exhaust his drycell claim; Plaintiff did not file any grievance with regard to his dry cell claim, let alone a final administrative appeal to the Central Office of the Bureau of Prison's General Counsel.

Notwithstanding the fact that the PLRA's exhaustion requirements are mandatory, the Second Circuit has recognized that certain caveats may apply. *See Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) ("[A] three-part inquiry is appropriate where a prisoner plaintiff seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]"). First, depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether such procedures were actually "available" to the prisoner. *Abney v. McGinnis,* 380 F.3d at 667. Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own action inhibiting the inmate's exhaustion of remedies

may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill v. New York,* 380 F.3d at 686 (citing *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir. 2004) & *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004)). Third, the Second Circuit has found that "there are certain 'special circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir. 2004). "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.*

In the instant case, it is undisputed that during his incarceration Plaintiff availed himself of the administrative remedy process at various FCI's at least nineteen times, including on multiple occasions while he was at FCI Raybrook. Magnusson Decl. at ¶ 9 & Ex. D. Accordingly, we find that Plaintiff was familiar with and had access to a sufficient administrative remedy process. Moreover, Defendants properly raised the affirmative defense of exhaustion in their first response to Plaintiff's Complaint, *see* Dkt. No. 25, and nothing in the record suggests that estoppel or a reprieve from the PLRA's exhaustion requirement – based on special circumstances – is warranted. Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's dry cell claim.

### D. Qualified Immunity

Although Defendants raise the issue of qualified immunity, given our findings above, we need not and do not discuss its applicability to the instant case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### III. CONCLUSION

*-10-*

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment or Alternative Relief (Dkt. No. 25) be **GRANTED** and that this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 29, 2014
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge